# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

SAMSON RESOURCES COMPANY,

      Plaintiff,

v.                                              No. 9-CV-828 WJ/GBW

OCCIDENTAL ENERGY MARKETING, INC.,

      Defendant.

## MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS OR TRANSFER THE PROCEEDINGS AND GRANTING DEFENDANT'S MOTION TO STAY PROCEEDINGS

THIS MATTER comes before the Court on Defendant Occidental Energy Marketing, Inc.'s ("Occidental") Motion to Dismiss, Transfer or Stay Proceedings (Doc. 7). Occidental first asks this Court to dismiss this case in favor of first-filed bankruptcy proceedings pending in the United States Bankruptcy Court for the District of Delaware in which it claims the same issues are being litigated. It also asks this Court to dismiss this case pursuant to Federal Rule of Civil Procedure 12(b)(7) for failure to join necessary and indispensable parties—namely, the debtors in the Delaware bankruptcy proceeding. Alternatively, Occidental asks this Court to either transfer the action to the Delaware Bankruptcy Court under 28 U.S.C. §§ 1404 and 1412 or to stay the action pending resolution of the Delaware bankruptcy case. Because this case does not involves the same issues currently being litigated in the Delaware Bankruptcy Court, this Court DENIES the Defendant's Motion to Dismiss or Transfer the proceedings. However, because issues decided by this Court may affect the bankruptcy proceedings and vice versa, this Court GRANTS the Defendant's Motion to Stay these proceedings until the Delaware Bankruptcy

Court makes certain determinations.

## BACKGROUND

Plaintiff Samson Resources Company ("Samson") operates an oil well in Lea County, New Mexico.  Samson also owns or operates oil wells in Colorado, Kansas, Louisiana, North Dakota, Texas, Oklahoma and Wyoming.  In 2007, Samson entered into a contract with Eaglwing, L.P., a company that gathers, transports, stores, blends, markets and distributes crude oil.  Eaglwing was part of a broader conglomerate of midstream oil service providers known as the SemGroup companies.  Under the terms of the contract, Eaglwing agreed to purchase all the oil produced from Samson's Lea County, New Mexico well every month.  Separately, Eaglwing negotiated a contract with Defendant Occidental, whereby it agreed to sell the oil it received from Samson to Occidental each month.

On July 22, 2008, the SemGroup companies, including Eaglwing, filed for Chapter 11 bankruptcy protection.[1]  Hundreds of oil producers, including Samson, were left without payment for the crude oil they sold to SemGroup in the two months preceding SemGroup's bankruptcy filing.  Samson immediately filed two Notices of Lien in Lea County, New Mexico claiming a 100% interest in the oil produced from the Lea County well from June 1, 2008 to July 18, 2008.  *See* Complaint, Exhibits H & I.  In August 2008, Samson filed an adversary proceeding in the Delaware Bankruptcy Court claiming a security interest and lien on all the oil sold to Eaglwing from June 1, 2008 to July 18, 2008 for which Eaglwing had failed to pay.  In an effort to streamline proceedings, the Delaware Bankruptcy Court developed procedures under

---

[1] The bankruptcy proceedings deal generally with all the SemGroup companies, not with Eaglwing specifically.  For ease of readability, however, and because Eaglwing is the only relevant party in bankruptcy, I will refer to the debtor throughout this opinion as Eaglwing rather than SemGroup.

which crude oil producers like Samson could initiate declaratory judgment proceedings for each state whose laws were implicated in order to determine under that state's law: 1) whether the producers had valid trust claims over the assets which would remove the assets from SemGroup's estate; and 2) whether the producers, as lien creditors, have superior rights over other creditors.  Accordingly, Samson filed several declaratory judgment proceedings in the Delaware Bankruptcy Court to determine these issues.  One of those proceedings sought a declaratory judgment under New Mexico law (hereinafter, "New Mexico declaratory judgment action").  In that action, Samson asserted claims for an accounting, for a declaration of the validity, extent and priority of its security interests and liens under New Mexico law, and for a determination of the total quantity and value of its collateral under the lien statute.  While the Delaware Bankruptcy Court has issued several substantive rulings, it has apparently not yet ruled on Samson's declaratory judgment action under New Mexico law.

Despite the fact that Samson filed proper proofs of claims with the Delaware Bankruptcy Court, Eaglwing did not include the sales from the Lea County, New Mexico well in its schedules of assets and liabilities it filed with the Delaware Bankruptcy Court.  *See* Summary of Schedules, Plaintiff's Exhibit A.  Apparently, Eaglwing believes that Occidental, not Eaglwing, owes Samson the funds from the oil at issue from the Lea County well in June and July of 2008.  When Eaglwing did not list any purchases from the Lea County well in its Section 503(b)(9) Notices (which are notices of claims against the debtor arising within twenty days prior to filing the bankruptcy petition), Samson filed objections with the Delaware Bankruptcy Court.  *See* Objection of Samson Resource Company and its Affiliates to 503(B)(9) Notices Filed by Debtors, Plaintiff's Exhibit C.  Samson's Chief Financial Officer filed an affidavit with the Delaware Bankruptcy Court stating: "Samson suspects that the Debtors dispute amounts related

to the [Lea County, NM] well.  Amounts for production related to the [Lea County, NM] well had been paid by Occidental Energy Marketing, Inc. in the months prior to the Debtors' bankruptcy filing.  Occidental has disputed that it is the first purchaser from this well and has indicated that Debtor is the first purchaser."  *See* Affidavit of C. Philip Tholen, Plaintiff's Exhibit C.  Essentially, neither Eaglwing nor Occidental claim responsibility for the money due for the oil produced from Samson's well.

In July 2009, Samson filed this action against Occidental in New Mexico state court. Samson demands $146,477.40 for the oil purportedly sold to Occidental during the months of June and July of 2008.  In its Complaint, Samson does not allege that it had any direct contract with Occidental.  Rather, Samson broadly alleges that Occidental purchased all production from the Lea County, New Mexico well in June and July 2008 and that Occidental was "the remitter of proceeds to [Samson] for the sale of proceeds from the well."  Complaint, at 2.  On that basis, Samson demands payment from Occidental under the New Mexico Oil and Gas Proceeds Payment Act, N.M. STAT. ANN. 70-10-1, *et seq.* (1991).  That statute gives an oil or gas producer a statutory right to payment for its sales of production.  *Id.* § 70-10-3.  In Count II, Samson alleges that Occidental acted with malicious intent in withholding payment and that Samson is therefore entitled to punitive damages.  In Counts III and IV, Samson makes claims for conversion and unjust enrichment.  Finally, and in the alternative, if the Court determines that Occidental is not the first purchaser of the crude oil, Samson asks this Court to foreclose on its New Mexico liens in Count V.

Defendant filed the instant Motion, arguing that suit in this forum is improper for a number of reasons and asking this Court to dismiss, transfer or stay these proceedings.

**ANALYSIS**

**I.  Motion to Dismiss**

First-Filed Bankruptcy Proceedings.  Defendant first argues that this Court should dismiss the case under the first-filed rule.  The Tenth Circuit has held that "[w]hen two courts have concurrent jurisdiction [over the same controversy], the first court in which jurisdiction attaches has priority to consider the case."  *Hospah Coal Co. v. Chaco Energy Co.*, 673 F.2d 1161, 1163 (10th Cir. 1982).  Essentially, the first-filed rule permits a district court to decline jurisdiction where a complaint raising the same issues against the same parties has previously been filed in another district court.  *Buzas Baseball, Inc. v. Board of Regents of University System of Georgia*, 189 F.3d 477, at *2 (10th Cir. 1999).  That rule does not apply, however, when the two courts are dealing with distinct controversies.  *Lipari v. U.S. Bancorp NA*, 345 Fed. Appx. 315, 317 (10th Cir. 2009).

Defendant claims that the issues raised by Plaintiff in this case are substantially similar to the issues raised before the Delaware Bankruptcy Court.  According to Defendant, both actions (1) arise out of Samson's sale of crude oil for which it has not been paid; (2) involve the same statutory claims; (3) seek to resolve whether Samson holds any liens under New Mexico law in the proceeds of the oil it sold; and (4) will require virtually the same discovery.  Plaintiff, on the other hand, argues that this suit is entirely distinct.  According to Plaintiff, this suit is a direct action against Occidental for oil sold directly by Samson to Occidental—*not* a suit for oil sold first to Eaglwing and then by Eaglwing to Occidental.  Plaintiff argues that its direct claims against Occidental are not at issue in the bankruptcy proceeding.  Plaintiff wants this Court to determine whether Occidental is the first purchaser of oil from the Lea County well in June and July 2008.  Either way, Plaintiff will presumably use the findings of this Court to either

5

withdraw or reaffirm its claims against Eaglwing in the bankruptcy proceedings.[2]

While the two proceedings are not identical, both this action and the bankruptcy proceeding involve (as far as the Court can tell) two overlapping issues.  First, both proceedings require their respective courts to determine whether Eaglwing or Occidental is the first purchaser of the oil from Samson's Lea County well.  In order to fully resolve the bankruptcy proceedings, the Delaware Bankruptcy Court will have to determine whether Samson has a proper claim against Eaglwing for the oil from the Lea County well in June and July of 2008.  In the New Mexico declaratory judgment action pending before the Delaware Bankruptcy Court, Samson asks the Delaware Bankruptcy Court to order Eaglwing "to provide an accounting regarding: (i) all New Mexico Product sold to [Eaglwing] during the period June 1 to July 22, 2008; [and] (ii) the sale and disposition by [Eaglwing] of all New Mexico Product sold to [Eaglwing] during the period June 1 to July 22, 2008."  Samson also asks the Delaware Bankruptcy Court to determine the total value of New Mexico oil and oil proceeds held by Eaglwing that is subject to Samson's New Mexico statutory liens.  Presumably, this determination will include a finding about whether, in fact, Eaglwing's estate includes oil or oil proceeds from Samson's Lea County well.

While a determination either way by the Delaware Bankruptcy Court may affect the proceedings here, the two lawsuits are not identical.  In this suit, this Court must decide whether Samson is entitled to recover these same sums *directly* from Occidental—either through the quasi-contract theories of unjust enrichment and conversion or under New Mexico statutory law giving Samson a right to payment.  Those questions are not pending before the Delaware

---

[2] Samson acknowledges that it cannot obtain a double recovery.  If it successfully recovers from Occidental in this lawsuit, it will drop its claims against Eaglwing relating to the Lea County well in the Delaware Bankruptcy Court.

Bankruptcy Court.  While the Delaware Bankruptcy Court will determine whether the June and July proceeds from the Lea County well are part of Eaglwing's estate, it will *not* determine whether Samson is entitled to those proceeds directly from Occidental.  Obviously, if the Delaware Bankruptcy Court determines that the June and July proceeds are part of Eaglwing's estate, then Samson can only recover its money through the Delaware bankruptcy proceedings and its claims here are foreclosed.[3]  On the other hand, if Delaware Bankruptcy Court determines that those funds are *not* part of Eaglwing's estate, then it will not reach the question presented here: whether Samson is entitled to demand those same funds from Occidental.  Therefore, dismissal of the claims demanding payment from Occidental (specifically, Counts I through IV of the Complaint) is inappropriate under a first-filed theory.

The second overlapping issue here is that both proceedings ask their respective courts to determine the validity of Samson's New Mexico liens.  In its New Mexico declaratory judgment action, Samson asks the Delaware Bankruptcy Court to determine the validity, extent and priority of its New Mexico liens with respect to Eaglwing's other creditors.  In Count VI of its Complaint before this Court, Samson asks this Court to foreclose its New Mexico liens in the event that this Court decides that Occidental is not the first purchaser.  Under New Mexico law, a lien on oil remains attached to the oil even if that oil is subsequently transferred by the first purchaser to a third party.  N.M. STAT. ANN. § 48-9-7(A) (1978).  However, if the third party pays the full purchase price for the oil, then he becomes a buyer in the ordinary course of

---

[3] While that is not a reason to dismiss these claims under the first-filed rule, that may be a reason to stay these proceedings, as discussed in more detail below.

business and he takes the product free of any liens.[4]  *Id.* § 48-9-3(C).  Therefore, if this Court determines that Occidental received the oil from the first purchaser (i.e. Eaglwing) without paying the full purchase price for the oil, Samson would be entitled to foreclose on its lien against Occidental.  Therefore, both proceedings require their respective courts to determine the validity of Samson's liens under New Mexico law.

However, the issue raised in Count V of the Complaint is distinct from the lien issues currently being resolved in the Delaware Bankruptcy Court.  While the Delaware Bankruptcy Court must determine the priority of Samson's New Mexico liens with respect to Eaglwing's other creditors, this Court need only decide whether Samson can foreclose on its lien against Occidental as a non-paying receiver of the oil from the Lea County well.  While both suits involve a determination of the *validity* of Samson's New Mexico liens, that lone identical issue is not sufficient to justify dismissal under the first-filed rule.  As the Court sees it, two outcomes are possible here.  First, the Delaware Bankruptcy Court could decline to reach the lien issue with respect to the Lea County well at all if it determines that Eaglwing did not purchase the oil from the Lea County well and, therefore, the oil is not part of Eaglwing's estate.  In that case, I would be free to determine whether Samson holds a valid lien against Occidental under New Mexico law for that oil.  Second, the Delaware Bankruptcy Court could determine that the oil from the Lea County well *is* part of Eaglwing's estate, in which case it would have to determine whether Samson's lien against the oil produced from that well is valid and whether Samson's lien receives priority over the liens of other creditors.  If that happens, then Samson's lien would be enforced against Eaglwing in the course of the bankruptcy proceedings.  Samson cannot

---

[4] Presumably, the lien holder would still hold a lien over the proceeds of the sale now held by the first purchaser.

enforce its lien against Eaglwing in the bankruptcy proceedings and enforce that same lien against Occidental in this Court.  While the issue raised in Count V is not identical to the lien issues currently pending before the bankruptcy court, the resolution of the issue in the Delaware Bankruptcy Court may affect the proceedings here.  Accordingly, while the Court chooses not to dismiss Count V under the first-filed rule, these points may weigh in favor of staying these proceedings as discussed below.

     <u>Failure to Join Necessary & Indispensable Parties</u>.  Defendant Occidental next asks this Court to dismiss the case under Federal Rule of Civil Procedure 19(a) because Plaintiff Samson has failed to join a necessary and indispensable party—specifically, Eaglwing.  A necessary party is one who "claims an interest relating to the subject of the action."  FED. R. CIV. P. 19(a). As Samson points out, however, Eaglwing has never claimed an interest in the funds at issue here.  To the contrary, Eaglwing has never listed the sums due for oil purchased from the Lea County well in any of its representations to the Delaware Bankruptcy Court presumably because Eaglwing does not believe it was the first purchaser of that oil.  Therefore, despite Defendant's assertions to the contrary, Eaglwing does not claim an interest in these funds and the Court denies Defendant's Motion to Dismiss under Rule 19(a).

## II.  Motion to Transfer Proceedings

     Alternatively, Occidental asks this Court to transfer this case to the Delaware Bankruptcy Court under 28 U.S.C. §§ 1404(a) or 1412.  Both transfer provisions permit a district court to transfer a case to another district court in certain circumstances.  In order to do so, however, venue must first be proper in the court to which the action will be transferred—here, the Delaware Bankruptcy Court.

     <u>Is Venue Proper</u>?  Bankruptcy courts can obtain jurisdiction in two ways.  First, they

9

have jurisdiction over "core proceedings" pursuant to 28 U.S.C. § 157.  Core proceedings are proceedings which have no existence outside of bankruptcy.  *In re Gardener*, 913 F.2d 1515, 1518 (10th Cir. 1990).  "Actions which do not depend on the bankruptcy laws for their existence and which could proceed in another court are not core proceedings."  *Id.*  Occidental claims that this action qualifies as a "core proceeding" because it involves determinations of the validity, extent and priority of Samson's New Mexico liens.  *See* 28 U.S.C. § 157(b)(2)(K) ("Core proceedings include . . . determinations of the validity, extent, or priority of liens.").  Occidental is incorrect.  First, Samson is claiming that Occidental owes it money from Samson's sale of oil directly to Occidental.  This claim in no way depends on bankruptcy law and cannot qualify as a "core proceeding."  Second, it is true that Samson is asking the Court, in the alternative, to foreclose on its New Mexico liens but only against *Occidental*, not against Eaglwing, and only with respect to funds which have been disclaimed by Eaglwing's estate.  Accordingly, this action cannot qualify as a core bankruptcy proceeding which depends on bankruptcy law or which has no existence outside of bankruptcy court.  *See Guild and Gallery Plus*, 72 F.3d 1171, 1181 (3d Cir. 1996) ("If the action does not involve property of the estate, then . . . [it is] a non-core proceeding."); *see also Matter of Xonics, Inc.*, 813 F.2d 127, 131 (7th Cir. 1987) (noting that a bankruptcy court has no jurisdiction over a dispute between two creditors over property disclaimed by the estate).

Next, bankruptcy courts have jurisdiction over cases "related to" a Title 11 bankruptcy proceeding pursuant to 28 U.S.C. § 1334(b).  A civil proceeding is related to a bankruptcy proceeding if "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy."  *Gardner*, 913 F.2d 1518 (citing *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984).  In other words, "the proceeding is related to the bankruptcy if the

10

outcome could alter the debtor's rights, liabilities, options, or freedom of action in any way, thereby impacting on the handling and administration of the bankruptcy estate." *Id.* Such proceedings need not be against the debtor or the debtor's property, *id.*; *In re Midgard Corp.*, 204 B.R. 764, 772 (B.A.P. 10th Cir. 1997), and a suit between two creditors may trigger a bankruptcy court's "related to" jurisdiction.

This suit is certainly "related to" the proceedings pending in the Delaware Bankruptcy Court. A ruling by this Court could conceivably affect Eaglwing's estate and could alter Eaglwing's rights and liabilities. For example, if this Court rules that Samson may recover the oil proceeds from Occidental, then two things will probably occur: Samson will drop its claim against Eaglwing in the bankruptcy proceedings, while Occidental will reduce its listed debts to Eaglwing in those same proceedings. Furthermore, as Occidental points out, if Samson prevails on Count II of its Complaint and succeeds in obtaining punitive damages against Occidental, then Occidental will file a claim against Eaglwing in the Delaware Bankruptcy Court for the amount of punitive damages. *See* Occidental's Reply, at 3 ("If Samson should obtain a judgment against [Occidental] that includes punitive damages, [Occidental] would have a claim against Eaglwing's estate for such an amount because Eaglwing warranted to [Occidental] that the crude oil was free of all liens and encumbrances.").

In a case with remarkably similar facts, the Fifth Circuit held that "related-to" jurisdiction exists. *Edge Petroleum Operating Co. v. GPR Holdings, L.L.C., et al. (In re TXNB Internal Case)*, 483 F.3d 292 (5th Cir. 2007). In that case, Edge Petroleum Operating Co. ("Edge"), a natural gas producer, sold gas to the debtors who in turn sold the gas to Duke Energy Trading and Marketing, L.L.C. ("Duke"). Without paying Edge for the natural gas, the debtors filed for bankruptcy. Edge subsequently sued Duke in state court seeking to recover the amount

owed to it for the sale of the natural gas.  The Fifth Circuit held that removal to federal court was appropriate because federal courts (including bankruptcy courts) have jurisdiction over proceedings "related to" bankruptcy proceedings.  It reasoned:

> Although . . . this case involves only a claim against Duke's assets, the district court was wrong to assume that a claim by Edge solely against Duke's property does not relate to the debtors' bankruptcy proceedings.  Someone owes Edge money for the gas; if it is not Duke, it is the debtors.  If it is Duke, then Duke will have discharged a liability of the debtors and, as the bankruptcy court recognized, probably will file a claim against the debtors' estates for reimbursement. Although there likely would be no change in the amount of liability claimed against the debtors, Duke and Edge presumably had different contractual arrangements with the debtors and different statutory bases for their claims.

*Id.* at 298.  Similarly here, either Eaglwing or Occidental owes Samson money for the oil sold from the Lea County well.  Any ruling by this Court would affect the claims against Eaglwing's estate or the value of that estate in the bankruptcy proceedings.  Accordingly, venue is proper in the Delaware Bankruptcy Court pursuant to its "related to" jurisdiction.

Is Transfer Appropriate?  While I find that the Delaware Bankruptcy Court has jurisdiction to hear this case, I decline to transfer this case pursuant to either § 1404 or § 1412 because to do so would needlessly complicate the bankruptcy proceedings and would inconvenience the parties and witnesses.  When deciding whether to grant a motion to transfer under § 1404(a), courts consider the plaintiff's choice of forum, convenience of the parties and witnesses, the expense to the parties of one venue over another, judicial efficiency and other practical considerations.  *See Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir. 1991).  Courts consider a similar list of factors when deciding whether to grant a motion to transfer under § 1412.  *See Blanton v. IMN Financial Corp.*, 260 B.R. 257, 266 (M.D.N.C. 2001).  Here, Plaintiff Samson elected to litigate his claims against Occidental relating to the Lea County well in New Mexico, and courts accord deference to the plaintiff's

choice of forum.  In addition, the only claim at issue here involves an oil well in New Mexico,

an Oklahoma Plaintiff corporation and a Texas Defendant corporation.  Given the location of the

parties and the oil well, New Mexico is clearly a more convenient forum than Delaware.

Occidental argues that Delaware is more convenient because the parties are already litigating

related claims there.  While both parties are involved in Eaglwing's bankruptcy proceedings, the

parties are *not* litigating Samson's claims against Occidental in the Delaware Bankruptcy Court.

Therefore, there is no reason to think that Delaware would be a more convenient forum than

New Mexico for this dispute.  Furthermore, adding this dispute to the already complex case

pending before the Delaware Bankruptcy Court would be inefficient and add needless

complication to the bankruptcy court's proceedings.  *See Ni-Fuel Co., Inc. v. Jackson*, 257 B.R.

600, 624 (N.D. Okla. 2000) ("These causes of actions involve claims . . . which are not part of

the bankruptcy, and attempting to force the actions into the pending bankruptcy could

additionally and needlessly complicate the bankruptcy.").  This Court is fully capable of

adjudicating Samson's claims.  By keeping this case here, the Delaware Bankruptcy Court can

focus on resolving the issues surrounding Eaglwing's estate without becoming embroiled in a

side dispute between Eaglwing's creditors and debtors.

Finally, if the Delaware Bankruptcy Court determines that the proceeds at issue are not

part of Eaglwing's estate, then it would have no power to hear Samson's claims against

Occidental.  As the Tenth Circuit has explained, "A bankruptcy court has jurisdiction over

disputes regarding alleged property of the bankruptcy estate at the outset of the case. When

property leaves the bankruptcy estate, however, the bankruptcy court's jurisdiction typically

lapses, and the property's relationship to the bankruptcy proceeding comes to an end." *Gardner*,

913 F.2d at 1518.  In other words, the Delaware Bankruptcy Court currently has jurisdiction to

13

hear this dispute because it has not yet determined whether the proceeds at issue are part of Eaglwing's estate.  As soon as it makes that determination, however, it will either lose jurisdiction over this dispute or this dispute will become moot.  If the Delaware Bankruptcy Court loses jurisdiction, then Samson will most likely bring suit—once again—against Occidental in New Mexico and the parties will end up back here where they began.  Because all these considerations weigh against transferring this case, I deny Defendant's motion to transfer.

## III.  Motion to Stay Proceedings

Finally, Occidental asks this Court to stay these proceedings until the Delaware Bankruptcy Court makes certain determinations.  This Court finds that Occidental's request is appropriate.  This Court cannot make any ruling regarding Occidental's liability to Samson without risking the possibility of an inconsistent finding from the Delaware Bankruptcy Court.  Only one party owes money to Samson—either Occidental or Eaglwing.  If the Delaware Bankruptcy Court determines that Eaglwing owes Samson the proceeds from the Lea County well (as Samson is arguing in that forum), then Occidental cannot owe Samson those same funds.  Furthermore, a stay will avoid a waste of judicial resources.  Why should the parties and this Court expend time and money litigating these issues when the Delaware Bankruptcy Court may decide that the funds are part of Eaglwing's estate, making this dispute moot?  Accordingly, this Court stays this action until the Delaware Bankruptcy Court determines whether the proceeds are part of Eaglwing's estate in bankruptcy and rules on Samson's lien claims.[5]  The parties need not wait until the Delaware Bankruptcy Court finalizes all SemGroup's bankruptcy proceedings, but only until the issues germane to this action are resolved.  At that point, the

---

[5] The stay will also be lifted if Samson chooses to withdraw its claims relating to the Lea County well in the bankruptcy proceedings.

parties should notify the Court that the Delaware Bankruptcy Court has ruled on the relevant issues.  In any case, the parties shall submit a status report six months from the date of this order advising the Court on the status of the case pending before the Delaware Bankruptcy Court and whether the Delaware Bankruptcy Court has taken any action on the issues relevant to this case. If not, then this Court will reevaluate the appropriateness of the stay at that time and may allow Samson to proceed with discovery on its theory that the oil was sold directly to Occidental and, thus, Occidental is directly liable for the funds at issue.

## CONCLUSION

For the reasons given above, this Court DENIES Defendant's Motion to Dismiss or Transfer the Proceedings, but GRANTS Defendant's Motion to Stay the Proceedings.  The parties shall notify the Court when the Delaware Bankruptcy Court has ruled on the relevant issues.  If the Delaware Bankruptcy Court has not ruled on the relevant issues within six months, then the parties shall submit a status report to this Court as outlined above.

**SO ORDERED.**

_____
UNITED STATES DISTRICT JUDGE